Filed 1/20/21  P. v. Abraham CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN ALBERT ABRAHAM,<br><br>Defendant and Appellant. | 2d Crim. No. B300549<br>(Super. Ct. No. CR45424)<br>(Ventura County) |

John Albert Abraham is a military veteran currently serving an indeterminate term in prison of 29 years to life for a violent assault.  Relying upon Penal Code[1] section 1170.91, he seeks "resentencing" to enable the trial court to consider specified aspects of his mental health as a circumstance in mitigation when setting his prison term.  He was, however, sentenced to an indeterminate term under the "Three Strikes Law."  (§ 1170.12.)

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

Section 1170.91 is limited to but one factor of many upon which the court may rely in determining which of three specified determinate terms is to be imposed and has nothing to do with "Three Strikes" sentences. The trial court was correct in finding he was ineligible. We affirm.

## FACTS AND PROCEDURAL HISTORY

The relevant facts underlying appellant's convictions are recited from our 2003 unpublished opinion affirming the judgment against him. (*People v. Abraham* (Jan. 22, 2003, B152175) [nonpub. opn.].) "Abraham and Deborah N. lived together for a period of time in her home. After a violent incident, Abraham moved out at Deborah's insistence. They remained friends for about three months but, after further violent behavior by Abraham, Deborah ended the friendship. A few days later, Deborah arrived home to find Abraham sleeping in her bed. She ordered him to leave and drove him to his residence.

"One week later, on November 7, 1998, Deborah awoke from a nap to find Abraham in her bedroom. After she ordered Abraham to leave, Abraham attacked her. He hit her on the back of the head and above an eye. He told her that he was going to kill her and, when she began screaming, grabbed her around the neck, choked her, and dragged her into the kitchen. He said if he could not have her, no one would and that he would kill her.

"Deborah briefly lost consciousness and, when she revived, Abraham pulled her up on her feet, pushed her against a counter, and repeated his death threat. Deborah pleaded with Abraham to stop, but Abraham pulled her towards her bedroom, threatened her again, and threatened to kill her sons as well.

2

"Deborah's former husband, Richard Crawford, arrived and saw Abraham throw Deborah down the steps outside her back door. Abraham knocked Crawford to the ground as Crawford went to Deborah's assistance.

"Abraham's former girlfriend Elizabeth R. [testified] that Abraham grabbed, hit and choked her on two occasions approximately three years before the current offenses. The court also admitted evidence that Abraham beat, choked, kidnapped and raped his former wife Sandra H. approximately 12 years before the current offenses."

In 2001, Abraham was convicted by jury of assault with force likely to produce great bodily injury (§ 245, former subd. (a)(1), now subd. (a)(4)), making criminal threats (§ 422), and two counts of battery (§ 242). The jury also found true the allegation that Abraham inflicted great bodily injury on the assault victim under circumstances involving domestic violence (§ 12022.7, former subd. (d), now subd. (e)). Abraham admitted suffering two prior convictions (Michigan convictions for kidnapping and first-degree criminal sexual assault) that qualified as strikes.

At his jury trial, Abraham presented evidence that while serving in the United States Army he had been diagnosed with paranoid schizophrenia. His diagnosis was subsequently modified to paranoid personality disorder with persecutory delusional aspects and either intermittent explosive disorder or impulse control disorder. Abraham's expert witness testified that Abraham's mental health problems began when he was a teenager and stemmed from his abusive upbringing. The expert also testified that the first signs of Abraham's mental problems in the Army arose shortly after he completed basic training.

At the sentencing hearing, Abraham asked the trial court to strike one of his strike priors pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The court denied the request. After "taking into account all the facts of the matter, background and age of Mr. Abraham and everything covered in all the papers and arguments," the court imposed a sentence of 29 years to life on the assault count, consisting of 25 years to life plus four years for the bodily injury enhancement, a concurrent term of 25 years to life on the criminal threats count, and concurrent six-month terms on the remaining counts. The court rejected the prosecution's request to impose consecutive terms.

In 2019, Abraham petitioned for veterans' resentencing under section 1170.91.[2] The trial court denied the petition on the

_____

[2] Section 1170.91 provides in relevant part: "(a) If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170. This consideration does not preclude the court from considering similar trauma, injury, substance abuse, or mental health problems due to other causes, as evidence or factors in mitigation. [¶] (b)(1) A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service may petition for a recall of sentence, before the trial court that entered the judgment or conviction in his or her case, to request resentencing pursuant to subdivision (a) if

4

ground that section 1170.91 does not apply to individuals, like Abraham, who are serving an indeterminate sentence rather than a determinate sentence under section 1170.[3]

## DISCUSSION

Abraham contends the trial court erred in concluding that veterans' resentencing under section 1170.91 is only available to individuals who were sentenced to a determinate term under section 1170. We are not persuaded.

"The rules of statutory construction are well-settled. 'Our task in interpreting a statute "is to ascertain and effectuate legislative intent. [Citations.]" [Citation.] In order to do so, "[w]e turn first to the words of the statute themselves, recognizing that 'they generally provide the most reliable indicator of legislative intent.' [Citations.] When the language of

---

the person meets both of the following conditions: [¶] (A) The circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing. [¶] (B) The person was sentenced prior to January 1, 2015. This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015."

[3] The court did not address the prosecution's alternative contention that Abraham was in any event not entitled to resentencing under section 1170.91 because the record of his conviction reflected that his mental health problems predated his military service and were considered by the trial court at his sentencing in 2001. We also decline to address this contention, which the People reiterate on appeal, in light of our conclusion that section 1170.91 resentencing is not available to individuals like Abraham who are serving an indeterminate term.

5

the statue is 'clear and unambiguous' and thus not reasonably susceptible [to] more than one meaning, """"there is no need for construction, and courts should not indulge in it.""""" [Citation.]" (*People v. Valliant* (2020) 55 Cal.App.5th 903, 908.)

"Effective January 1, 2015, sentencing courts must consider any trauma, substance abuse, and mental health problems caused by a defendant's service in the United States military . . . ." (*People v. Bonillo-Bray* (2020) 49 Cal.App.5th 234, 238; § 1170.91, subd. (a).) When such evidence is presented, "the court shall consider the circumstance as a factor in mitigation *when imposing a term under subdivision (b) of Section 1170.*" (§ 1170.91, subd. (a), italics added.) Effective January 1, 2019, defendants sentenced prior to January 1, 2015, may "request resentencing pursuant to subdivision (a)." (*Id.*, subd. (b).)

By its express, clear, and unambiguous terms, veterans' resentencing under section 1170.91 applies only to individuals who are serving determinate sentences imposed under subdivision (b) of section 1170. (*People v. Estrada* (2020) 58 Cal.App.5th 839.) Abraham, however, was sentenced to a third-strike indeterminate sentence under section 1170.12. Such a sentence "fall[s] entirely outside [the] ambit" of section 1170. (*People v. Sasser* (2015) 61 Cal.4th 1, 8.) As the legislative history of section 1170.91 also makes clear, the statute was intended to "simply require[] a court to consider military status and the presence of mental health problems induced by that service as factors of mitigation *in determinate sentencing*" and "simply directs the judge to consider such circumstances in determining whether or not to grant probation, or whether to impose the lower prison term for convictions and enhancements *punished under the determinate sentencing law*." (Sen. Com. On

6

Public Safety, Analysis of Assembly Bill (AB) 2098 (2013-2014 Reg. Sess.) as amended May 29, 2014, italics added.) Although Abraham's sentence includes a four-year enhancement, that enhancement was also imposed pursuant to section 1170.12, not section 1170. (§ 1170.12, subd. (c); *People v. Anderson* (1995) 35 Cal.App.4th 587, 593.)

Abraham "acknowledges that the court has no authority to recall an indeterminate sentence under section 1170.91, subdivision (b) if the prescribed punishment for the underlying offense is an indeterminate life sentence." He claims, however, that "[a]s a matter of fairness, if the prescribed punishment for the underling offenses is a determinate sentence, then section 1170.91, subdivision (b) authorizes a court to reconsider its prior imposition of an indeterminate sentence." He then offers that "[t]he prior imposition of such a sentence may have resulted from the court not considering evidence of military trauma as a factor in mitigation when it originally denied [Abraham's] *Romero* motion." (Fn. omitted.)

This argument ignores the plain language of the statute. Section 1170.91 is not implicated in the grant or denial of a *Romero* motion. The statute only requires the consideration of a defendant's military history and mental health problems "when imposing a term under subdivision (b) of section 1170," i.e., a determinate term. (§ 1170.91, subd. (a).)[4] Because appellant was

---

[4] For the first time on appeal, Abraham also claims that the trial court "has [the] same authority to recall a three strikes life sentence under section 1170.91(b) as it does under section 1170(d)." (Capitalizations omitted.) Aside from being forfeited, this claim lacks merit because the court's authority to recall a sentence under section 1170, subdivision (d) must be exercised

sentenced to an indeterminate term, section 1170.91 does not apply.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

---

"within 120 days of the date of commitment . . . ." Moreover, that authority permits the court to "resentence the defendant in the same manner as if [he or she] had not previously been sentenced." (§ 1170, subd. (d)(1).) Section 1170.91 contains no such provision.

Vincent J. O'Neill, Jr., Judge
Superior Court County of Ventura

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and David W. Williams, Deputy Attorney General, for Plaintiff and Respondent.